## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Leah Schwartz,<br><br>                           Plaintiff,<br><br>       -v.-<br><br>Equifax Information Services, LLC;<br>Experian Information Solutions, Inc.;<br>TransUnion, LLC;<br>American Express National Bank; and<br>Barclays Bank Delaware,<br>                         Defendants. | Case No.:<br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL** |

Plaintiff Leah Schwartz brings this Complaint, by and through counsel, against Defendants Equifax Information Services, LLC ("Equifax"); Experian Information Solutions, Inc. ("Experian"); TransUnion, LLC ("TransUnion"); (Equifax, Experian and TransUnion each a "Bureau" and collectively "Bureaus"); Barclays Bank Delaware ("Barclays"), and American Express National Bank ("AMEX") (Barclays, and AMEX each a "Furnisher" and collectively "Furnishers") and respectfully sets forth, complains, and alleges, upon information and belief, the following:

## PRELIMINARY STATEMENT

1. As described more fully below, Defendants improperly reported accounts that were the result of fraud and identity theft, on Plaintiff's credit report.

2. Plaintiff was repeatedly victimized by her abusive ex-husband who used her identity to fraudulently open multiple accounts in Plaintiff's name.

3. When Plaintiff reported these facts to Defendants, they ignored her pleas thereby assisting her abusive ex-husband in yet again victimizing Plaintiff.

4. Plaintiff disputed the accounts to Defendants providing the necessary documentation.

5.      Defendants failed to block and failed to remove the accounts.

6.      Plaintiff was thereby damaged.

7.      Plaintiff brings this action for damages arising from the Defendants' violations of 15 U.S.C. § 1681 et seq., also known as the Fair Credit Reporting Act ("FCRA").

## JURISDICTION AND VENUE

8.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as well as 15 U.S.C. § 1681p, *et seq*.

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claim occurred here, the Plaintiff resides here, and the Defendants transact business here.

## PARTIES

10.     Plaintiff is a resident of the State of New York, County of Orange.

11.     At all times material hereto, Plaintiff was a "consumer" as defined under 15 U.S.C. § 1681a (c).

12.     Defendant Equifax Information Services, LLC is a consumer reporting agency as defined by 15 U.S.C. § 1681a (f) and conducts substantial and regular business activities in this judicial district.

13.     Equifax is a Georgia corporation registered to do business in this State.

14.     Equifax may be served with process upon its registered agent at Corporation Service Company, 80 State Street, Albany, NY 12207.

15.     Equifax is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers to third parties for the purpose of furnishing consumer reports, as defined under 15 U.S.C. § 1681a (p).

16.    At all times material hereto, Equifax disbursed such consumer reports to third parties under a contract for monetary compensation.

17.    Equifax, Inc, the parent company of Equifax, is traded on the New York Stock Exchange under the symbol EFX.

18.    Defendant Experian, is a consumer reporting agency as defined by 15 U.S.C. § 1681a (f) and conducts substantial and regular business activities in this judicial district.

19.    Experian, is an Ohio corporation registered to do business in this State.

20.    Experian may be served with process upon its registered agent at c/o CT Corporation System, 28 Liberty Street, New York, NY 10005.

21.    Experian is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers to third parties for the purpose of furnishing consumer reports, as defined under 15 U.S.C. § 1681a (p).

22.    At all times material hereto, Experian disbursed such consumer reports to third parties under a contract for monetary compensation.

23.    Experian PLC, the parent company for Experian, is traded on the London Stock Exchange under the symbol EXPN.

24.    Defendant TransUnion is a consumer reporting agency as defined by 15 U.S.C. § 1681a (f) and conducts substantial and regular business activities in this judicial district.

25.    TransUnion is a Delaware corporation registered to do business in this State.

26.    TransUnion may be served with process upon its registered agent at The Prentice-Hall Corporation System, Inc., 80 state Street, Albany, NY 12207.

27.     TransUnion is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers to third parties for the purpose of furnishing consumer reports, as defined under 15 U.S.C. § 1681a (p).

28.     At all times material hereto, TransUnion disbursed such consumer reports to third parties under a contract for monetary compensation.

29.     Trans Union, the parent company of Defendant TransUnion, is traded on the New York Stock Exchange under the symbol TRU.

30.     Defendant AMEX is a person who furnishes information to consumer reporting agencies under 15 U.S.C. § 1681s-2.

31.     Defendant AMEX has an address for service at C T Corporation System, 28 Liberty Street, New York, NY, 10005.

32.     Defendant Barclays is a person who furnishes information to consumer reporting agencies under 15 U.S.C. § 1681s-2.

33.      Defendant Barclays has an address for service at 125 S. West Street, Wilmington, DE 19801.

## **FACTUAL ALLEGATIONS**

34.     Plaintiff incorporates the above allegations as if set forth here.

### *Background*

35.     Plaintiff is a victim of identity theft.

36.     Plaintiff was victimized by her abusive ex-husband.

37.     Upon information and belief, unbeknownst to Plaintiff, he opened accounts in Plaintiff's name.

38.     When she became aware that accounts were opened by her husband in her name, Plaintiff did not fully appreciate the severity of his actions and its impact upon her.

39.     Defendants' actions described herein, despite evidence otherwise, assisted the spousal abuse against Plaintiff.

40.     At some point prior to the events described below Plaintiff realized that there were financial accounts opened in her name and without her knowledge or permission.

41.     There was an account in Plaintiff's name with Barclays, beginning with account number 000257… ("Barclays Account").

42.     There was an account in Plaintiff's name with AMEX, ending with account number XXXX9883 ("AMEX Account") (Barclays and AMEX accounts collectively "Account").

43.     Each Account was opened without Plaintiff's knowledge or authority.

44.     Plaintiff did consent to having any of the underlying transactions on the Accounts in her name or to become her responsibility.

45.     Upon information and belief, Plaintiff's now ex-husband used Plaintiff's identity to open the Accounts knowing the transactions were all being incurred in Plaintiff's name.

46.     When Plaintiff's ex-husband finally left her, that's when Plaintiff became aware that the Accounts were being alleged to be her responsibility.

47.     Each Account was appearing on each Bureau's credit report.

48.     Each Account was charged off.

49.     Plaintiff's ex-husband had all of Plaintiff's personal and financial information to open these accounts.

50.     Plaintiff's ex-husband preyed on Plaintiff's emotions and naivete in handling these fraudulent accounts and transactions.

51.     Yet, Plaintiff was unaware of all this.

52.     Eventually, when Plaintiff realized the reality and breadth of the crime, she tried her best to remedy the ill effects of his actions.

*Violations*

53.     When Plaintiff's became aware of the fraudulent accounts and balances she reported these crimes to law enforcement.

54.     Plaintiff reported tit to the Federal Trade Commission.

55.     The Federal Trade Commission operates the website IdentityTheft.gov which it says is "the federal government's one-stop resource for identity theft victims. The site provides streamlined checklists and sample letters to guide you through the recovery process." https://www.identitytheft.gov.

56.     On or about November 23, 2022, Plaintiff submitted an FTC Identity Theft Report ("FTC report").

57.     The FTC Report number is 152100126.

58.     Plaintiff confirmed that she is a victim of the crime of identity theft.

59.     In the FTC Report, Plaintiff described the fraud against her.

60.     Plaintiff stated that the Accounts were not opened by her or with her consent.

61.     Plaintiff described how her ex-husband fraudulently opened these accounts.

62.     Plaintiff confirmed her understanding that knowingly making false statements to the government may result in a fine, imprisonment, or both.

63.     The FTC Report states, "Use this form to prove to business and credit bureaus that you submitted an FTC Identity Theft Report to law enforcement."

64.     An FTC Report is acceptable proof of identity theft to block items in a consumer's credit report as disputed for being fraudulent.

65.     Upon receipt of notice of identity theft, each Bureau is required to block the disputed information pursuant to 15 U.S.C. § 1681c-2.

66.     On or about November 23, 2022, Plaintiff disputed each Account ("Dispute").

67.     Plaintiff sent her Dispute to each Bureau.

68.     In her Dispute, Plaintiff included a description of the identity theft, copies of the FTC Report, her social security information, her government-issued United States passport card, and a utility bill to verify her identity.

69.     In response, Experian removed the AMEX Account but not the Barclays Account.

70.     Other than that, despite the Dispute, and subsequent to it, the Accounts and fraudulent charges remained on Plaintiff's credit report from each Bureau.

71.     Each Bureau is required to notify each Furnisher of Plaintiff's respective dispute(s).

72.     On or about the dates identified above, it appears and is therefore averred that each Bureau notified each Furnisher of Plaintiff's respective dispute(s).

73.     Upon receipt of the dispute(s) of the account by the Plaintiff from each Bureau, each Furnisher failed to conduct a reasonable investigation and continued to report false and inaccurate adverse information on the consumer report of the Plaintiff with respect to their respective disputed Accounts.

74.     Had each Furnisher done a reasonable investigation it would have been revealed to it that its Account information is inaccurate.

75.     A reasonable investigation by each Defendant would have revealed that each respective Account is being incorrectly reported.

76.     Despite being on notice from Plaintiff, each Furnisher was reporting the Accounts and balance to each Bureau.

77.     Each Bureau was reporting the Account(s) and balance on Plaintiff's credit reports.

78.     On information and belief, on date(s) better known to each Bureau, it issued credit reports concerning the Plaintiff that included the Account(s) and incorrect balances.

79.     The information furnished by each Furnisher and published by each Bureau was inaccurate.

80.     Each Bureau had been reporting this inaccurate information through the issuance of false and inaccurate credit information and consumer reports that it has disseminated to various persons and credit grantors, both known and unknown.

81.     Despite the dispute(s) by the Plaintiff that the information on her consumer report was inaccurate with respect to the disputed Account, each Defendant did not evaluate or consider any of the information, claims, or evidence of the Plaintiff and did not make an attempt to substantially reasonably verify that the derogatory information concerning the disputed account was inaccurate.

82.     Each Bureau violated 15 U.S.C. § 1681i (a)(1)(A) by failing to conduct a reasonable investigation and failing to delete or correct the disputed trade line within 30 days of receiving each of Plaintiff's Disputes.

83.     Each Bureau violated 15 U.S.C. § 1681i (a)(2)(A) by failing to provide notice of the dispute(s) to each respective Furnisher or, in the alternative, if each Bureau did comply with Section 1681i (a)(2)(A) then it failed to comply with Section 1681i (a)(2)(B) by failing to provide Plaintiff all relevant information received from each Furnisher.

84.     Each Bureau violated 15 U.S.C. § 1681e (b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information on Plaintiff's credit report.

85.     Each Bureau further violated 15 U.S.C. § 1681c-2 (a) (Block of information resulting from identity theft).

86.     Each Furnisher's actions described herein violated 15 U.S.C. 1681s-2 (b).

87.     Defendants' responses to Plaintiff's Dispute went so far as to be nonsensical, inaccurate, or nonresponsive.

88.     In response to the Dispute, Equifax refused to block the Accounts as required.

89.     Equifax claimed it could not block the Accounts without "proof of your identity, the specific information that is the result of identity theft, and a copy of your complete and submitted Identity Theft Report with the Federal Trade Commission… regarding the identity theft".

90.     But that is the very information Plaintiff provided in her Dispute.

91.     Plaintiff's dispute included proof of her identity by giving her personal information as well as her government-issued United States Passport.

92.     Plaintiff's dispute included the specific information that is the result of identity theft by specifying the facts and including her explanation and the relevant details.

93.     Plaintiff's dispute included a copy of her complete and submitted Identity Theft Report with the Federal Trade Commission.

94.     Equifax's response was nonsensical, unresponsive to Plaintiff's specific dispute, and willfully or recklessly noncompliant with the law.

95.     In response to the Dispute, TransUnion refused to block the Accounts as required.

96.     TransUnion claimed it could not block the Accounts because Plaintiff's Dispute "has either a) been made in error; b) is a misrepresentation of material fact relevant to the request to block and/or c) you have obtained possession of goods, services or money as a result of the transaction [sic] issue."

97.     This is false.

98.     In response to the Dispute, Barclays declined any explanation merely stating the Barclays Account was "being reported accurately".

99.     In response to the Dispute, AMEX falsely claimed that Plaintiff had made payment arrangements on the AMEX Account.

100.     Notwithstanding Plaintiff's efforts, Defendants continued to publish and disseminate such inaccurate information to other third parties, persons, entities and credit grantors.

101.     Defendants knew the information was inaccurate.

102.     Each Defendant was in possession of the information and documentation of the inaccuracies and fraud of each Account yet persisted in reporting it anyway.

103.     Had each Bureau enacted and followed reasonable procedures to assure maximum possible accuracy of the information on Plaintiff's credit report, the negative account information would not have appeared on Plaintiff's credit report.

104.    Defendants continued to furnish credit data which is inaccurate and materially misleading, and each Bureau's reporting of the above-referenced tradeline continued to be inaccurate and materially misleading.

105.    To exacerbate all this, AMEX even tried to collect this fraudulent debt from Plaintiff after her Dispute and after its receipt of proof that the AMEX Account is fraudulent.

106.    AMEX sent Plaintiff one or more dunning letters to pressure Plaintiff to pay a debt that is not hers.

## *Damages*

107.    These actions by Defendants caused damage to Plaintiff.

108.    Defendants' erroneous reporting affected Plaintiff's reputation, creditworthiness, and credit score.

109.    As a result of Defendants' failure to comply with the FCRA, Plaintiff has been damaged.

110.    Plaintiff suffered damage to her reputation as it falsely appeared as if she owed more money on the accounts.

111.    Plaintiff suffered damage to her reputation as it falsely appeared as if she was delinquent on the accounts.

112.    This false information was published to numerous third-parties.

113.    This negative information reflected poorly upon Plaintiff and is incompatible with the proper exercise of Plaintiff's financial dealing.

114.    Plaintiff has, inter alia, suffered a loss of credit, loss of ability to purchase and benefit from credit, loss of time, loss of money, harm to her reputation, a chilling effect on applications for credit, mental and emotional pain, anguish, humiliation, and embarrassment of

having fraudulent information on her credit report, in her credit file, and for credit denial and its after-effects.

115.    Plaintiff was also denied funding opportunities due to Defendants' actions.

116.    Plaintiff was emotionally distraught and damaged, and had difficulty with sleep.

117.    After disputing each Account and requesting it be blocked and removed, Plaintiff was attempting to secure credit.

118.    Due to each of Defendants' action, Plaintiff was unable to secure the necessary credit.

119.    Plaintiff was multiple times for personal loans due to Defendants' actions.

120.    Defendants' actions have exacerbated, enabled, and lengthened the impact of the identity thief's crimes against Plaintiff.

## FIRST CAUSE OF ACTION
### (Willful Violation of the FCRA as to each Bureau)

121.    Plaintiff incorporates the allegations above the First Cause of Action as if set forth here.

122.    This is an action for willful violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

123.    Each Bureau violated 15 U.S.C. § 1681e (b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files that Each Bureau maintained concerning the Plaintiff.

124.    Each Bureau violated 15 U.S.C. § 1681i (a)(1)(A) by failing to conduct a reasonable investigation and delete disputed tradelines within 30 days of receiving Plaintiff's dispute(s) and by failing to maintain reasonable procedures with which to verify the disputed information in Plaintiff's credit file.

125.    The FCRA has provisions that specifically govern disputes based on alleged identity theft, yet each Bureau failed to comply with those provisions.

126.    When Plaintiff alleged identity theft and sent a valid identity theft report that was filed with law enforcement, each Bureau was required to stop reporting the fraudulent information in the Plaintiff's credit report. See 15 U.S.C. §§ 1681c-2(a), 1681a(q)(4); 12 C.F.R. § 1022.3(i)(1).

127.    The FCRA thus reflects congressional recognition that it is unreasonable for each Bureau not to block information that is contained in a credit report due to identity theft when the crime has been reported to law enforcement.

128.    Each Bureau further violated 15 U.S.C. § 1681c-2(a) (Block of information resulting from identity theft) by failing to block information in Plaintiff's credit report after receiving the Report.

129.    Upon information and belief, each Bureau further violated 15 U.S.C. § 1681c-2(b) by failing to promptly notify the furnisher of information identified by Plaintiff under subsection (a) of 15 U.S.C. § 1681c-2.

130.    Each Bureau has willfully and recklessly failed to comply with the Act.

131.    The failure of each Bureau to comply with the Act include but are not necessarily limited to the following:

    a)    The failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported;

    b)    The failure to remove and/or correct the inaccuracy and derogatory credit information after a reasonable request by the Plaintiff;

c)  The failure to promptly and adequately investigate information which each Bureau had notice was inaccurate;

d)  The continual placement of inaccurate information into the credit report of the Plaintiff after being advised by the Plaintiff that the information was inaccurate;

e)  The failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised each Bureau to delete;

i)  failing to block information in Plaintiff's credit report after Plaintiff identified it as information that resulted from identity theft;

j)  failing to promptly notify the furnisher of information identified by Plaintiff as information that resulted from identity theft;

k)  The failure to take adequate steps to verify information Each Bureau had reason to believe was inaccurate before including it in the credit report of the consumer; and

l)  The failure to provide notice of a dispute to the furnisher or, in the alternative, the failure to provide Plaintiff all relevant information received from the furnisher in response to a dispute.

132.    As a result of the conduct, action and inaction of each Bureau, Plaintiff suffered damage as described above.

133.    The conduct, action and inaction of each Bureau was willful rendering each Bureau liable for actual, statutory and punitive damages in an amount to be determined by a judge and/or jury pursuant to 15 U.S.C. § 1681n.

134.    Plaintiff is entitled to recover reasonable costs and attorney's fees from each Bureau in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, an individual, demands judgment against each Bureau for damages together with attorney's fees and court costs pursuant to 15 U.S.C. § 1681n.

## SECOND CAUSE OF ACTION
### (Negligent Violation of the FCRA as to each Bureau)

135.    Plaintiff incorporates the allegations above the First Cause of Action as if set forth here.

136.    This is an action for negligent violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

137.    Each Bureau violated 15 U.S.C. § 1681e (b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files that each Bureau maintained concerning the Plaintiff.

138.    Each Bureau violated 15 U.S.C. § 1681i (a)(1)(A) by failing to conduct a reasonable investigation and delete the disputed tradeline within 30 days of receiving Plaintiff's dispute(s) and by failing to maintain reasonable procedures with which to verify the disputed information in Plaintiff's credit file.

139.    The FCRA has provisions that specifically govern disputes based on alleged identity theft, yet Each Bureau failed to comply with those provisions.

140.    When Plaintiff alleged identity theft and sent a valid identity theft report that was filed with law enforcement, each Bureau was required to stop reporting the fraudulent information in the Plaintiff's credit report. See 15 U.S.C. §§ 1681c-2(a), 1681a(q)(4); 12 C.F.R. § 1022.3(i)(1).

141.    The FCRA thus reflects congressional recognition that it is unreasonable for each Bureau not to block information that is contained in a credit report due to identity theft when the crime has been reported to law enforcement.

142.    Each Bureau violated 15 U.S.C. § 1681c-2(a) (Block of information resulting from identity theft) by failing to block information in Plaintiff's credit report after receiving the Report.

143.    Upon information and belief, each Bureau further violated 15 U.S.C. § 1681c-2(b) by failing to promptly notify the furnisher of information identified by Plaintiff under subsection (a) of 15 U.S.C. § 1681c-2.

144.    Each Bureau has negligently failed to comply with the Act.

145.    The failure of each Bureau to comply with the Act include but are not necessarily limited to the following:

a)   The failure to follow reasonable procedures to assure the maximum possible accuracy of the information reported;

b)   The failure to remove and/or correct the inaccuracy and derogatory credit information after a reasonable request by the Plaintiff;

c)   The failure to promptly and adequately investigate information which each Bureau had notice was inaccurate;

d)   The continual placement of inaccurate information into the credit report of the Plaintiff after being advised by the Plaintiff that the information was inaccurate;

e)   The failure to promptly delete information that was found to be inaccurate, or could not be verified, or that the source of information had advised each Bureau to delete;

f) failing to block information in Plaintiff's credit report after Plaintiff identified it as information that resulted from identity theft;

g) failing to promptly notify the furnisher of information identified by Plaintiff as information that resulted from identity theft;

h) The failure to take adequate steps to verify information each Bureau had reason to believe was inaccurate before including it in the credit report of the consumer; and

i) The failure to provide notice of a dispute to the furnisher or, in the alternative, the failure to provide Plaintiff all relevant information received from the furnisher in response to a dispute.

146.    As a result of the conduct, action and inaction of each Bureau, Plaintiff suffered damage as described above.

147.    The conduct, action, and inaction of each Bureau was negligent, entitling the Plaintiff to damages under 15 U.S.C. § 1681o.

148.    The Plaintiff is entitled to recover reasonable costs and attorney's fees from each Bureau in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and 1681o.

WHEREFORE, Plaintiff, an individual, demands judgment against each Bureau for damages together with attorney's fees and court costs pursuant to 15 U.S.C. § 1681o.

### THIRD CAUSE OF ACTION
#### (Willful Violation of the FCRA as to each Furnisher)

149.    Plaintiff incorporates the allegations above the First Cause of Action as if set forth here.

150.    This is an action for willful violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

151.    Pursuant to the Act, all persons who furnished information to reporting agencies must participate in re-investigations conducted by the agencies when consumers dispute the accuracy and completeness of information contained in a consumer credit report.

152.    Pursuant to the Act, a furnisher of disputed information is notified by the reporting agency when the agency receives a notice of dispute from a consumer such as the Plaintiff.

153.    The furnisher must then conduct a timely investigation of the disputed information and review all relevant information provided by the agency.

154.    The results of the investigation must be reported to the agency and, if the investigation reveals that the original information is incomplete or inaccurate, the furnisher must report the results to any other agencies which were supplied such information.

155.    Each Furnisher willfully and recklessly violated 15 U.S.C. § 1681s-2 (b) as described above, including, but not limited to, failing to fully and properly investigate the dispute(s) of the Plaintiff, failing to review all relevant information regarding same, and failing to correctly report results of an accurate investigation to the credit reporting agencies.

156.    Furnishers continued to report their respective Account on Plaintiff's credit report after being notified of her dispute(s) regarding the inaccuracies in relation to said accounts.

157.    As a result of the conduct, action and inaction of each Furnisher, Plaintiff suffered damage as described above.

158.    The conduct, action, and inaction of each Furnisher was willful, rendering it liable for actual, statutory and punitive damages in an amount to be determined by a jury pursuant to 15 U.S.C. § 1681n.

159.    Plaintiff is entitled to recover reasonable costs and attorney's fees from Furnisher in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, an individual, demands judgment against each Furnisher for damages, together with attorney's fees and court costs pursuant to 15 U.S.C. § 1681n.

## FOURTH CAUSE OF ACTION
### (Negligent Violation of the FCRA as to Furnisher)

160.    Plaintiff incorporates the allegations above the First Cause of Action as if set forth here.

161.    This is an action for negligent violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

162.    Pursuant to the Act, all persons who furnished information to reporting agencies must participate in re-investigations conducted by the agencies when consumers dispute the accuracy and completeness of information contained in a consumer credit report.

163.    Pursuant to the Act, a furnisher of disputed information is notified by the reporting agency when the agency receives a notice of dispute from a consumer such as the Plaintiff.

164.    The furnisher must then conduct a timely investigation of the disputed information and review all relevant information provided by the agency.

165.    The results of the investigation must be reported to the agency and, if the investigation reveals that the original information is incomplete or inaccurate, the furnisher must report the results to any other agencies which were supplied such information.

166.    As described above, each Furnisher is liable to the Plaintiff for negligently failing to comply with the requirements imposed on furnishers of information pursuant to 15 U.S.C. § 1681s-2 (b).

167.     After receiving the dispute notice(s) from each Bureau, each Furnisher negligently failed to conduct its reinvestigation in good faith.

168.     A reasonable investigation would require a furnisher such as the Defendants to consider and evaluate a specific dispute by the consumer, along with all other facts, evidence and materials provided by the agency to the furnisher.

169.     The conduct, action and inaction of each Furnisher was negligent, entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

170.     As a result of the conduct, action and inaction of each Bureau, Plaintiff suffered damage as described above.

171.     The Plaintiff is entitled to recover reasonable costs and attorney's fees from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and 1681o.

WHEREFORE, Plaintiff, an individual, demands judgment in the favor against each Furnisher for damages, together with attorney's fees and court costs pursuant to 15 U.S.C. § 1681o.

## DEMAND FOR TRIAL BY JURY

172.     Plaintiff demands a trial by jury for all claims and issues in this complaint to which Plaintiff is or may be entitled to a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment from each Defendant as follows:

a)  For actual damages provided and pursuant to 15 U.S.C. § 1681o (a) be awarded for each negligent violation as alleged herein;

b)  For actual damages provided and pursuant to 15 U.S.C. § 1640(a)(1);

c)  For statutory damages provided and pursuant to 15 U.S.C. § 1681n (a);

d)   For statutory damages provided and pursuant to 15 U.S.C. § 1640(a)(2);

e)   For punitive damages provided and pursuant to 15 U.S.C. § 1681n (a)(2);

f)   For attorney fees and costs provided and pursuant to 15 U.S.C. § 1681n (a)(3), 15 U.S.C. § 1681o (a)(2) and 15 U.S.C. § 1640(a)(3); and

g)   For any such other and further relief as this Court may deem just and proper.

Dated:  May 31, 2023

**Stein Saks, PLLC**

*s/ Eliyahu Babad*
Eliyahu Babad, Esq.
One University Plaza, Suite 620
Hackensack, NJ 07601
(201) 282-6500 x121
EBabad@SteinSaksLegal.com

*Attorneys for Plaintiff*